# Richmond.

## ZIRKLE V. ALLISON.

### January 22, 1920.

1. TREES AND TIMBER—*When Title to Timber Passes.*—Under timber contracts which require the timber to be cut and removed by a specified date the title to the timber never passes out of the grantor until the grantee cuts and removes it within the period of time specified in the contract for so doing; not that there is forfeiture by the grantee of the timber remaining uncut or unremoved after the time limit, but because it has never become his property, for there is an express condition precedent in the contract itself which precludes the passing of the title from the grantor to him.

2. DEMURRER TO THE EVIDENCE—*Inferences in Favor of Plaintiff.*— Where a case was presented to the trial judge upon a demurrer to the evidence, it was his duty, and on appeal is the duty of the Supreme Court of Appeals, to draw every inference in favor of the plaintiff from the evidence which the jury might have drawn.

3. DEMURRER TO THE EVIDENCE—*Inferences in Favor of Plaintiff— Case at Bar.*—Where the parties contracted with reference to timber lying within certain boundaries, and it was shown by parol evidence that these boundaries were clearly and definitely designated and understood by the parties, and there was nothing in the contract from which it could be inferred that the purchaser had any right to locate a sawmill on any of the adjacent land of the grantor, in an action of detinue by the grantee on demurrer to the evidence by the grantor, the jury might have inferred that the sawmill was there located under a parol license from the owner of the land.

4. TREES AND TIMBER—*When Title Passes—Removal of Timber Within Specified Time.*—Under a contract for the sale of timber, the parties contracted with reference to the timber lying within certain boundaries, and the parol evidence showed that these boundaries were clearly and definitely designated and understood by the parties. •The timber was cut and removed within the prescribed time to a sawmill located upon other adjacent land of the grantor. The jury might have inferred

that the sawmill was located under a parol license from the owner of the land. If so located, then the removal of the timber to this place under such a parol license was just as clearly a removal of the timber from the premises—that is, the premises to which the contract referred, upon which the timber grew—the boundaries of which were clearly pointed out, as if it had been removed to the land of some other person than the grantor, and consequently title to the timber passed to the grantee.

5. INTERPRETATION AND CONSTRUCTION—*Construction in Favor of Justice.*—When an instrument is susceptible of two constructions, the one working injustice and the other consistent with the right of the case, that one should be favored which standeth with the right.

Error to a judgment of the Circuit Court of Culpeper county, in an action of detinue. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Grimsley & Miller, Timberlake & Nelson,* and *William Horgan,* for the plaintiff in error.

*Edwin H. Gibson,* for the defendant in error.

PRENTIS, J., delivered the opinion of the court.

D. T. Zirkle instituted his action of detinue against the defendant, to recover about 100,000 feet of sawed lumber then piled and stacked upon the land of the defendant. Issue was joined, and at the conclusion of the plaintiff's evidence the defendant demurred thereto, in which demurrer the paintiff joined, and the jury returned a verdict assessing the plaintiff's damages, subject to the judgment of the court upon the demurrer. The trial judge sustained the demurrer and entered judgment for the defendant, and the plaintiff assigns error.

The facts out of which the controversy arises are these: The parties entered into a contract in these words:

"Contract made and entered into this 4th day of January, 1916, by and between D. T. Zirkle, party of the first part, and T. L. Allison and K. M. Allison, his wife, parties of the second part:

."Witnesseth: That for and in consideration of the sum of $425.00, four hundred and twenty-five dollars, cash in hand paid at and before the signing of this contract, receipt of which is hereby acknowledged, the parties of the second part have this day sold to the party of the first part all the second growth pine and *popular* on two tracts one supposed to contain twenty-five acres, adjoining the lands of B. B. Green on the one side and the Oak Woods on the other, tract No. 2 containing about three or four acres on the east side of the farm of the parties of the second part. The parties of the second part do hereby agree to give eighteen months from January 1, 1916, in which to cut and remove the aforesaid timber.

"As witness the following signatures and seals this the day and date first above written."

Zirkle employed one Houghton to cut and saw the timber covered by the contract, and before Houghton placed his mill for that purpose Allison showed him the timber land and then showed him a place for his sawmill. The boundaries of such timber land were clearly pointed out, and the place at which the mill was located was entirely outside of these boundaries and within the fences enclosing the cultivated land of Allison, which fences entirely separated the timber tracts from such cultivated land. It will be observed that the written contract allows "eighteen months from January 1, 1916, in which to cut and remove the aforesaid timber." It was cut and taken from the location at which it grew and sawed into lumber at the mill site location above referred to. It had been sawed

into .lumber six months before the time when the contract required it to be cut and removed. After the expiration of the said period, Allison, the defendant, refused to allow its removal from such mill site, claiming that under the contract it had not been removed within the time specified, therefore, that the plaintiff had lost his right to remove it, or to claim it as his property.

In support of this contention of the defendant a number of Virginia cases are relied upon. They are, *Young & Wright* v. *Camp. Mfg. Co.*, 110 Va. 678, 66 S. E. 843; *Brown* v. *Surry Lumber Co.*, 113 Va. 503, 75 S. E. 84; *Quigley* v. *Rhea*, 114, Va. 271, 76 S. E. 330; *Smith* v. *Ramsey*, 116 Va. 530, 82 S. E. 189; *Hartley* v. *Neaves*, 117 Va. 219, 84 S. E. 97; *Blackstone* v. *Allen*, 117 Va. 452, 85 S. E. 568; *Wheeler* v. *Hite*, 119 Va. 345, 89 S. E. 101.

[1] These cases undoubtedly settle the proposition in Virginia, that under timber contracts which require the timber to be cut and removed by a specified date, the title to the timber never passes out of the grantor until the grantee cuts and removes it within the period of time specified in the contract for so doing; not that there is a forfeiture by the grantee of the timber remaining uncut or unremoved after the time limit, but because it has never become his property, for there is an .express condition precedent in the contract itself which precludes the passing of the title from the grantor to him.

[2-4] The question here, then, is whether under the contract under which this timber was sold, it has been cut and removed within the prescribed time limit. In determining this question it must be noted that the case. was presented to the trial judge upon a demurrer to the evidence, and therefore, it was his duty, and is now our duty, to draw every inference in favor of the plaintiff from the evidence which the jury might have drawn.

Scanning the contract, then, which is to be construed, it is apparent that the parties contracted with reference to the timber lying within certain boundaries, and the parol evidence shows that these boundaries were clearly and definitely designated and understood by the parties. It was from these premises that the timber was to be cut and removed, and there is nothing in the contract from which it can be inferred that the purchaser had any right to locate a sawmill on any of the adjacent land of the grantor. It does not appear clearly upon what conditions the sawmill was located on the other land of the defendant. It might just as well have been located on the adjacent land of some other person. The jury could not have inferred that it was located there by virtue of any provision in the written contract, for there is nothing therein upon which such an inference can be based, and therefore, they could have concluded that it was there located under a parol license from the owner of the land. If so located, then the removal of the timber to this place under such a parol license was just as clearly a removal of the timber from the premises—that is, the premises to which the contract referred, upon which the timber grew—the boundaries of which were clearly pointed out, as if it had been removed to the land of some other person than the defendant. This being true, we are clear in our view that the demurrer of the defendant should have been overruled.

The doctrine of the cases relied upon will not be extended—certainly not in this case in which the contract does not so require, and in which such a construction would promote injustice rather than justice.

[5] The language of Burks, J., in *Old Dominion Bank v. McVeigh*, 32 Gratt. (73 Va.) 542, is worthy of repetition in this connection: "When an instrument is susceptible of two constructions, the one working injustice and the other consistent with the right of the case, that one should be favored which standeth with the right."

A case which in its circumstances is quite like this one is *Watson* v. *Gross,* 112 Mo. App. 615, 87 S. W. 104, and that case supports the view which we have expressed.

The timber has been bought and paid for; the lumber into which it has been manufactured has been removed from the premises referred to in the written contract; and, for the reasons indicated, we are of opinion that the court erred in sustaining the defendant's demurrer to the evidence. We will, therefore, enter the judgment upon the verdict of the jury which the trial court should have entered.

*Reversed.*